IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **NATIONAL ELECTRICAL BENEFIT FUND,** | * * * | |
| **Plaintiff** | * * | |
| v. | * * | Civil Action No.: TDC-19-3003 |
| **WIRE TO WATER ELECTRIC OF NEW YORK, INC., dba WIRE TO WATER, INC.** | * * * * | |
| **Defendant.** | * ***** | |

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff's Motion for Default Judgment ("Plaintiff's Motion").  ECF No. 13.  Plaintiff National Electrical Benefit Fund ("NEBF") filed a complaint against Defendant Wire to Water Electric of New York, Inc., dba Wire to Water, Inc. ("Wire to Water") alleging Defendant violated the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1145.  Pl.'s Compl. ¶ 16, ECF No. 1.  Plaintiff seeks damages under 29 U.S.C. § 1132(g)(2)(A)–(E),[1] which includes: unpaid contributions, interest on unpaid contributions, liquidated damages, attorneys' fees, costs, and other legal or equitable relief the Court deems appropriate.  *Id.* at ¶ 18; 29 U.S.C. 1132(g)(2)(A)–(E).  Pursuant to 28 U.S.C. § 636 and Local Rules 301, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation concerning default judgment and/or damages. ECF No. 16.

For the reasons stated herein, I recommend the Court **GRANT** Plaintiff's Motion.

---

[1] Throughout the Complaint and other filings, Plaintiff often abbreviated citations to the ERISA.  The Court has reformatted each citation to the ERISA to reflect the full statutory citation.

I.      **Factual Background**

On October 25, 2019, Plaintiff commenced this action against Defendant alleging that Defendant violated 29 U.S.C. § 1145 of the ERISA. Pl.'s Compl. ¶ 16. According to the Complaint, Plaintiff is a multiemployer pension benefit plan within the meaning of 29 U.S.C. § 1002(37)(A), that has been established pursuant to an agreement[2] entered into between the IBEW and NECA. *Id.* at ¶ 4. Plaintiff alleges that Defendant is a signatory to the CBA between IBEW Local Union 25 and NECA. *Id.* at ¶¶ 4–6; *See also* Aff. of Total Amount Due NEBF (Brian Killian) ("Killian Aff.") ¶ 3, ECF No. 13–2. Defendant became a signatory when it signed the Letter of Assent which bound Defendant to the CBA between NECA and IBEW Local Union 25. Killian Aff. ¶ 3; Letter of Assent—A, ECF No. 13–2, Ex. 1.

Under the CBA, Plaintiff alleges that Defendant is obligated to submit contributions to the NEBF on behalf of Defendant's employees covered by the CBA. Pl.'s Compl. ¶ 6. Plaintiff further alleges that under the CBA, Defendant was also bound to the terms of the NEBF's Restated Agreement and Trust ("NEBF Trust Agreement") which provides for the administration of the NEBF. *Id.* at ¶ 7; NEBF Trust Agreement, 13–2, Ex. 5. Plaintiff alleges that Defendant "has been delinquent in making contributions to the NEBF on behalf of its employees covered by the Collective Bargaining Agreement." Pl.'s Compl. at ¶ 8. According to Plaintiff, Defendant failed to pay the NEBF at least $2,460.83 in delinquent contributions for work performed during the period of January 1, 2014 through December 31, 2015 and $18,188.24 in contributions for work performed during the period of July 2018 and August 2019. *Id.* at ¶¶ 9–10. Plaintiff and

---

[2] Throughout the pleadings and exhibits, the words: "Labor Agreement," "Construction Agreement," "Inside Wiring Agreement," and "Collective Bargaining Agreement" are used interchangeably. All of these are used to describe the agreements signed by the National Electrical Contractors Association ("NECA") and the International Brotherhood of Electrical Workers Local Union 25 ("IBEW") on October 31, 2013 and July 18, 2016 respectively. *See* CBA, ECF No. 13–2, Exs. 2 and 3. Hereinafter, the Court refers to these agreements as the Collective Bargaining Agreements ("CBA").

its counsel made several demands for payment of the amounts due, however, Defendant failed to respond. *Id.* at ¶ 11.

On November 4, 2019, Plaintiff served Defendant with process. ECF No. 8. On February 7, 2020, Plaintiff filed a Motion for Clerk's Entry of Default, and a Motion for Default Judgment. ECF Nos. 12 and 13. On March 10, 2020, an Entry of Default was made by the Clerk against Defendant. ECF No. 15.

Plaintiff seeks: (1) unpaid delinquent contributions in the amount of $20,649.07; (2) interest calculated at the rate of 10% annum compounded monthly, in the amount of $2,445.45;[3] (3) liquidated damages in the amount of $4,129.82, which represents 20% of the contributions owed; (4) the cost of the audit of Defendant's payroll records in the amount of $225.00; and (5) an award of reasonable attorneys' fees and the costs of this action. Pl.'s Compl. 5.

## II.     Legal Background

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Fed. R. Civ. P. 55. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A party may request a default judgment in two ways: (1) if a plaintiff's claim is for a sum certain or a sum that can be made certain with computation, a plaintiff may file a request with the Clerk attaching an affidavit showing the amount due; or (2) in all other cases, the party seeking default judgment must apply to the Court. Fed. R. Civ. P. 55(b)(1)–(2). In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted); *TeleVideo Sys., Inc. v. Heidenthal*,

---

[3] As of February 20, 2020, interest on the delinquent contributions totaled $3,027.41. Killian Aff. ¶ 12.

826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). However, the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (citations omitted). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Id.*; 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure Civil* § 2688.1 (4th ed. 2019) ("Liability is not deemed established simply because of the default. . . [and] the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

The Fourth Circuit has repeatedly expressed a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."). However, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Still, "acceptance of [the] undisputed facts does not necessarily entitle [the non-defaulting party] to the relief sought." *Ryan*, 253 F.3d at 780–81. If the plaintiff establishes liability, the Court then turns to the determination of damages. *CGI Finance, Inc. v. Johnson*, No. ELH-12-1895, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In determining damages, the Court cannot accept Plaintiff's factual allegations as true and must make an independent determination.

4

*Id.; see also Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *Int'l Painters and Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so "if the record supports the damages requested." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citation omitted). The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. *See, e.g., id.* (citing cases in which damages were awarded after a default judgment and without a hearing, based on affidavits, printouts, invoices, or other documentary evidence).

### III. Discussion

#### A. Liability

Plaintiff contends Defendant violated 29 U.S.C. § 1145 by failing to make contributions to a multiemployer pension plan in accordance with the CBA and plan documents. Pl.'s Compl. ¶ 16. Specifically, 29 U.S.C. § 1145 states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . shall make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. Pursuant to the CBA under Section 6.03(A):

> It is agreed that in accord with the Employees Benefit Agreement
> of the [NEBF] as entered into between [NECA] and [IBEW] . . .
> now delineated as the Restated Employees Benefit Agreement and
> Trust, that unless authorized by the NEBF, the individual employer
> will forward monthly to the NEBF designated local collection
> agent an amount equal to 3% of the gross monthly labor payroll

>paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF.

CBA 21, ECF No. 13–2, Exs. 2 and 3.  Binding itself to the CBA, Defendant signed the Letter of Assent which states:

>In signing this letter of assent, the undersigned firm does hereby authorize [NECA] as its collective bargaining representative for all matters contained in or pertaining to the current and subsequent Inside labor agreement between [NECA] and [IBEW].  In doing so, the undersigned firm agrees to comply with, and be bound by, all of the terms and conditions contained in said current and subsequent approved labor agreements.  This authorization, in compliance with the current approved labor agreement, shall become effective on the17th day of Aug. 1992.  It shall remain in effect until terminated by the undersigned employer giving written notice to the [NECA] and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

Letter of Assent—A, 1; *See* Pl.'s Compl.  ¶ 6.

Assuming the truth of the well-pleaded allegations in the Complaint, the Court is persuaded that Plaintiff has established Defendant's liability for failure to pay the contributions as required under the CBA.  Accordingly, the Court recommends that Defendant is deemed liable to Plaintiff for violating 29 U.S.C. § 1145.

**B. Damages**

Once liability has been established, the question of damages must be addressed.  As previously stated, the Court must make an independent determination as to the amount of damages Plaintiff may recover.  *See Lawbaugh*, 359 F. Supp. 2d at 422.  However, the Court is prohibited from awarding damages that are different in type or exceed the amount demanded in the pleadings.  *See* Fed. R. Civ. P. 54(c); *Diaz v. Mi Mariachi Latin Restaurant Inc*., No. GJH-18-636, 2019 WL 528185, at *2 (D. Md. Feb. 11, 2019).  The Court may rely on affidavits or other documentary evidence to establish damages.  *See Dekalb Farmers Mkt., Inc. v. Collazo*

*Produce, Inc.*, No. 5:18-CV-201-D, 2019 WL 2745750, at *2 (E.D.N.C. June 28, 2019); *Alliance Storage Tech., Inc. v. Engstrom*, No. 4:11cv46, 2012 WL 1580544, at *2 (E.D. Va. May 3, 2012); *See, e.g.*, *Diaz*, 2019 WL 528185, at *3 (relying upon facts included in a sworn written statement to calculate wages owed). On default judgment, the Court may award damages without a hearing, but only if the record supports the damages requested. *Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012). Statements in pleadings are not sufficient evidence to prove a plaintiff's entitlement to damages. *Walker v. Thomas*, 311 F.R.D. 3, 6 (D.D.C. 2015).

Defendant's failure to make the required contributions trigger statutory damages which were also memorialized in the NEBF Trust Agreement. Under 29 U.S.C. § 1132 (g)(2)(A)–(E), in an action under Section 1145 of the ERISA in which judgment is awarded in favor of the pension plan, the court shall award the following:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan not in excess of 20 percent of the [unpaid contributions],
>
> (D) reasonable attorneys' fees and costs, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132 (g)(2)(A)–(E); *See also Int'l Painters and Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 685. The damages are also set forth in Section 6.9 in the NEBF Trust Agreement:

> In the event a Covered Employee has failed or fails to make required contributions, the Trustees are authorized and empowered:

> 6.9.1 to impose on and receive from such Covered Employer all cost of any audit;
>
> 6.9.2 to . . . receive . . . liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent . . .;
>
> 6.9.3 to . . . receive . . . the lost interest from the delinquent amounts, to be calculated at a ten percent (10%) annual rate compounded monthly throughout the period of delinquency;
>
> 6.9.5 to . . . receive . . . all costs, audit expenses, actuarial expenses, and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise;

NEBF Trust Agreement 25–26, ECF No. 13–2, Ex. 5.

In support of Plaintiff's request for unpaid contributions, interest, liquidated damages, legal fees, and costs, Plaintiff submitted: (1) the Killian affidavit; (2) a Letter of Assent; (3) the CBA; (4) NEBF Trust Agreement; and (5) an NEBF Delinquency Report. Plaintiff attests that Defendant owes $20,649.07 in unpaid contributions; $4,129.82 in liquidated damages; $3,027.41 in interest; $225.00 in audit costs; and $1,744.90 in attorneys' fees and legal costs, for a total damages award of $30,001.20. Pl.'s Mot. 2; Killian Aff. ¶¶ 12–14.

### 1. Unpaid Contributions

Mr. Killian, the Audit and Delinquency Manager of the NEBF, attests that he is familiar with the contents of the Complaint, and that Defendant owes $2,460.83 in unpaid contributions discovered in audit findings for the period of January 2014 through December 2015 and $18,188.24 in unpaid contributions for the period from June 2018, through August 2019. Killian Aff. ¶ 12. Mr. Killian's assertions are further detailed in the NEBF Delinquency Reports. Delinquency Report 1–2, ECF No. 13–2, Ex. 8; NEBF Delinquency Report 1, ECF No. 13–2, Ex. 9. After reviewing the competent evidence in support of the amount sought by Plaintiff, it is

the Court's recommendation that Plaintiff be awarded its request for $20,649.07 for unpaid contributions.

### 2. Interest

Due to Defendant's failure to make its monthly contribution to Plaintiff, Plaintiff is also owed interest on the unpaid contributions. Section 1132 of the ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132. The NEBF Agreement provides an interest rate "at a ten percent (10%) annual rate compounded monthly throughout the period of the delinquency." NEBF Trust Agreement 25. Applying the ten percent interest rate, Plaintiff submits it is owed $3,027.41. Killian Aff. ¶ 12. This amount is comprised of $1,234.11 interest stemming from delinquent contributions for the period of unpaid contributions from January 1, 2014 through December 31, 2015, Compliance Audit Report 2, ECF No. 13–2, Ex. 6, and $1,793.30 interest stemming from delinquent contributions for the period of unpaid contributions from July 2018 through January 2020. NEBF Delinquency Report 1. After reviewing the competent evidence in support of the amount sought by Plaintiff, the Court recommends an award to Plaintiff of $3,027.41 in interest.

### 3. Liquidated Damages

Section 1132 of the ERISA allows Plaintiff to recover the greater of either interest on the unpaid contributions or liquidated damages provided under the plan not to exceed twenty percent (20%). 29 U.S.C. 1132(g)(2)C). Consistent with Section 1132 of the ERISA, the NEBF Trust Agreement allows Plaintiff to recover "liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent." NEBF Trust Agreement 25; 29 U.S.C. § 1132. As noted above, the total interest is $3,027.41. Twenty percent of the unpaid contributions is

$4,129.82. NEBF Delinquency Report 1; Delinquency Report 1–2. The amount of liquidated damages equal to twenty percent of the unpaid contributions is greater than the interest on the unpaid contributions. After reviewing the competent evidence in support of Plaintiff's request, the Court recommends an award to Plaintiff of $4,129.82 in liquidated damages.

### 4. Attorneys' Fees and Costs

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success." *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). The NEBF Trust Agreement also provides Plaintiff may receive "from . . . Employer all costs, audit expenses, actuarial expenses, and attorneys fees incurred by the Trustees." NEBF Trust Agreement 25–26.

An award of attorneys' fees to Plaintiff will require an application of the traditional lodestar methodology factors. *Int'l Painters and Allied Trades Indus. Pension Fund.*, 919 F. Supp. 2d at 688. The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In addition, the specific facts of the case are to be considered in calculating a reasonable figure. The United States Court of Appeals for the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the

>nature and length of the professional relationship between attorney
>and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  When a claim for attorneys' fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's Local Rules which includes an entire appendix listing "Rules and Guidelines" for how parties are to request reimbursement of fees.  Local Rules, App. B (D. Md. Dec. 1, 2018).

Plaintiff, in seeking to collect unpaid contributions from Defendant has incurred attorneys' fees and costs in the amount of $1,744.90.  Killian Aff. ¶ 13.  To support this request, a declaration of Jennifer Bush Hawkins, counsel of record for Plaintiff, employed by Potts-Dupre, Hawkins & Kramer was submitted.  Declaration of Jennifer Bush Hawkins ("Hawkins Declaration") ¶¶ 1–3, ECF No. 13–1.  Also submitted was an Adjusted Laffey Matrix[4] to demonstrate the prevailing market rate for attorneys in the "D.C. area."  Laffey Matrix 1, ECF No. 13–1, Ex. 1; Hawkins Decl. ¶ 5.

While Plaintiff's Motion does not explicitly address all twelve factors set forth by the Fourth Circuit, the filing contains sufficient information to make an independent assessment possible.  Those factors that appear to be significant to the determination of reasonableness in this case are addressed below.  The remaining factors—while the information exists in the filing—present no novel issues or significant impact on the reasonableness of the attorneys' fees requested.[5]

---

[4] A Laffey Matrix is "an official statement of market-supported reasonable attorney fee rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia."  *Robinson v. Equifax Info. Serv., LLC*, 560 F.3d 235, 244 (4th Cir.).

[5] The factors that are not addressed in detail in this memorandum are:

>(3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; . . . (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or

11

### i.   (1) The Time and Labor Expended

Plaintiff's counsel has provided her declaration as lead counsel detailing her qualifications and summarizing the work completed for the case. Hawkins Decl. ¶¶ 3–7. Within the declaration, Plaintiff's counsel also included a detailed time log with a breakdown of the hours billed and the tasks completed. *Id.* at ¶ 6. According to the time log, Ms. Hawkins' firm spent 5.1 hours billing $1,744.90 in legal fees and expenses to litigate the case. *Id.* at ¶¶ 6–10. The fee was calculated using the rate of $139.00 per hour for her legal assistant, Caroline Lippie, and $379.00 per hour for Ms. Hawkins' attorney rate.

Generally, administrative or secretarial work should not be compensated as an award for attorneys' fees. *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012) (citing *In re Beenblossom*, BK 10-40335-TJM, WL 2710417, at *4 (Bankr. D. Neb. July 7, 2010)) (concluding that activities such as "file setup, scanning, setting up appointments" are clerical and, therefore not billable). "Fees for work performed by paralegals are generally recoverable, but only to the extent that they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client." *Id.* (citing *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002)). Where a description is ambiguous as to whether the task is clerical or legal in nature, courts have declined to award fees for those hours. *Kabore*, 2012 WL 5077636, at *4 (declining to award fees for hours spent "prepar[ing] for mailing to 425 opt-ins" as it was "not immediately apparent what this 'preparation' entailed").Having reviewed the time entries for Ms. Lippie, the tasks performed do not appear to be clerical, and are tasks traditionally performed by an attorney. It appears Ms. Lippie drafted all pleadings and

---

circumstances; . . . (10) the undesirability of the case within the legal community in which the suit arose; and (11) the nature and length of the professional relationship . . . .

*Barber*, 577 F.2d at 226 n.28.

12

documents to be filed to the Court, and Ms. Hawkins reviewed and edited the documents.  As to Ms. Hawkins' time entries, of the total billing, she billed only 1.4 hours.  The Court finds the time and labor expended by Ms. Lippe and Ms. Hawkins is reasonable.  Plaintiff exercised billing judgment by having most of the work billed by Ms. Lippie at a lower rate.

### i. (2) The Novelty and Difficulty of the Questions Raised

This case appears to be a typical collection of delinquent contributions case under ERISA.  Although, not novel or difficult, Plaintiff's counsel efficiently filed: (1) a Complaint; (2) a Motion for Clerk's Entry of Default; and (3) a Motion for Default Judgment.  Plaintiff also prepared and filed a detailed affidavit with exhibits of Brian Killian which allowed the Court to determine the damages resulting from Defendant's failure to pay contributions.

### ii. (5) The Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work for which a fee award is sought.  For the convenience of counsel, the Local Rules include guidelines listing a presumptive range of reasonable hourly rates.  *Gonzales v. Caron*, No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiff's counsel seeks to recover fees based on hourly rates which fall within the guidelines set forth in the Local Rules.  To further support her request for fees, Plaintiff's counsel provided a Laffey Matrix which sets forth the customary fees in Washington D.C. Laffey Matrix 1.  However, a Laffey Matrix is not binding upon the United States District Court for the District of Maryland.  *Robinson*, 560 F.3d at 245 (stating that the plaintiff failed to provide evidence that the Laffey Matrix which pertains to Washington D.C. attorneys was a reliable indicator of the hourly rates of attorneys in Alexandria, Virginia); *Grissom v. The Mills*

*Group*, 549 F.3d 313, 323 (4th Cir. 2008) (stating that the plaintiff provided no evidence that the Laffey Matrix is a reliable indicator of the hourly rates of attorneys in Reston, Virginia). Plaintiff's counsel did not supply affidavits or declarations from experienced attorneys outside of her firm who could attest to whether the rates charged by Plaintiff's counsel are customary for this work.

Nevertheless, the rates charged for Ms. Lippie and Ms. Hawkins are reasonable. The rate charged by Ms. Lippie is within the rate set forth in Appendix B of the Local Rules. As to Ms. Hawkins' fee, given that she has been a licensed attorney since 1994, Hawkins Decl. ¶ 3, and a bar member of the United States District for the District of Maryland since 1997, https://www.mdd.uscourts.gov/bar-member-search, (Last visited Apr. 17, 2020), her hourly rate is also consistent with the rates set forth in Appendix B of the Local Rules.

### iii. (8) The Amount in Controversy and the Results Obtained

Plaintiff's Complaint requests $20,649.07 for unpaid delinquent contributions, $2,445.45 for interest on the delinquent contributions, $4,129.82 for liquidated damages, and $225.00 for audit costs. Pl.'s Compl. 5. Plaintiff seeks an additional $581.96 for the interest which accrued from the time the Complaint was filed and the time Plaintiff's Motion was filed. This request appears reasonable.

### iv. (9) The Experience, Reputation, and Ability of the Attorney

Ms. Hawkins has over 24 years of experience practicing law. Hawkins Decl. ¶ 3. Of those 24 years, Ms. Hawkins has more than 23 years representing the NEBF in its ERISA collections proceedings. *Id.* Ms. Hawkins has been a bar member of the United States District for the District of Maryland since 1997. Accordingly, the Court finds that Ms. Hawkins'

extensive practice with ERISA collections proceedings provides Plaintiff with adequate representation.

### v.    (12) Attorneys' Fees Awards in Similar Cases

Counsel has not provided any examples of attorneys' fee awards in similar cases, but a review of a few cases reveals Plaintiff's requested amount is a reasonable amount to recover. *See National Elec. Benefit Fund v. United Network Systems, Inc.*, No. GJH-17-27, 2017 WL 5056418, at *4 (D. Md. Oct. 30, 2017) (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $1,339.30); *Int'l Painters and Allied Trades Indus. Pension Fund*, 919 F. Supp. 2d at 689 (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $4,017.48); *National Elec. Benefit Fund v. Allran/Hemmer Elec., LLC*, No. GJH-16-1184, 2017 WL 1273922, at *5 (D. Md. Jan. 6, 2017) (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $1,535.40); *National Elec. Benefit Fund v. NRG Mgmt. Solutions, Inc.* TDC-19-254 (D. Md. Oct. 15, 2019), ECF No. 18 (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $1,625.30). Accordingly, the Court finds the ratio between what Plaintiff seeks to be in line with other similar cases.

### 5.    Audit Costs

Plaintiff seeks to recover $450.00 spent on an audit conducted by Legacy Professionals LLP. Killian Aff. ¶ 12; Compliance Audit Report 1. Under 29 U.S.C. § 1132 (g)(2)(E), in an action under Section 1145 of the ERISA in which judgment is awarded in favor of the pension plan, the court shall award "(E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132 (g)(2)(E). Further, under section 6.9.1 of the NEBF states that if

Defendant fails to make the required contributions, Plaintiff may ". . . to impose on and receive from such Covered Employer all cost of any audit."  NEBF Trust Agreement 25.

Here, in the Complaint, Plaintiff seeks to recover $225.00 representing the cost to the NEBF of the audit of Defendant's payroll records.  Pl.'s Compl. 5.  In Mr. Killian's affidavit, Mr. Killian attests that Defendant owes Plaintiff $450.00 in audit costs.  Killian Aff. ¶ 12.  However, since $450.00 was pled in Plaintiff's Motion, and a sufficient bill of the audit reflected a bill for $450.00 was presented, *See* Invoice, ECF No. 13–2, Ex. 7, the Court enforces the parties' agreement, and deems the award of $450.00 appropriate to remediate the cost of the audit.

**IV.   Conclusion**

For the foregoing reasons, it is my recommendation that the Court **GRANT** Plaintiff's Motion for Default Judgment against Defendant and awards Plaintiff a total of $30,001.20. $20,649.07 for unpaid contributions; $3,027.41 in interest, $4,129.82 in liquidated damages, $450.00 in audit costs, and $1,744.90 in attorneys' fees and costs.

April 21, 2020

/s/
Charles B. Day
United States Magistrate Judge

CBD/hjd